No. 23,425.

C. R. BROOKER, *Appellee,* v. MISSOURI PACIFIC RAILROAD COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

CONTRACT—*Riparian Privileges—Use of Water by Railroad Company—Contract Interpreted.* A contract relating to use of water by the defendant from a creek which runs through the plaintiff's land and which is crossed by the defendant's right of way, interpreted, and *held:* The purpose of the contract was to secure to the defendant the privilege of taking water to the appropriation of which the plaintiff, as a riparian owner, might object; and the defendant's privilege, as a riparian owner, of taking water to an extent which would not transgress the rule of reasonable use, was not relinquished.

Appeal from Anderson district court; CHARLES A. SMART, judge. Opinion filed January 7, 1922. Reversed.

*W. P. Waggener, Walter E. Brown,* both of Atchison, and *Manford Schoonover,* of Garnett, for the appellant.
*John K. Bowman,* and *Noah L. Bowman,* both of Garnett, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to recover the sum due on a contract relating to use of water by the defendant, from Cedar creek, which runs through the plaintiff's land, and is crossed by the defendant's railroad. The plaintiff recovered, and the defendant appeals.

The water in the creek flows northward. The defendant's right of way extends east and west from the crossing. South of the railroad bridge and beginning on the right of way is a pool of water which extends some 300 yards upstream. At the south end of the pool is a ford, and south of that is another pool. In the year 1917, in time of drought, the defendant placed a boiler and pump at the north end of the north pool, for the purpose of taking water from the stream. Negotiations resulted in a contract formed by the plaintiff's acceptance of the terms of the following letter, written to him by the defendant's superintendent:

"I did not receive your letter of the 6th inst., therefore yours of November 10th was the first communication we received. Immediately asked our pumper to see you, and after receiving his report, asked Mr. J. L. Riley to interview you, which he did, and have received his report wherein he states you ask $2.00 per day for the privilege of our taking water from pool at temporary station near Mont Ida; the understanding being that other pools farther up could be ditched and water utilized for engine purposes after water in the present pool is exhausted. Of course, we do not know how long we will desire to

take water; depending, of course, upon how soon rain falls in sufficient quantities to replenish water supply at other points.

"If agreeable, please signify your understanding of this agreement on copy attached, and mail to me as soon as possible. Send us your bill at the end of each month, and we will voucher same."

After a time, the boiler and pump were taken away. In 1918, the defendant's division engineer reinstalled the temporary pumping station. At first water was taken from the right of way. The engineer testified that, when the water was exhausted from the right of way, and it became necessary to place the intake on the plaintiff's land, he learned of the previous arrangement, and instructed the pumper to carry it out. The intake was moved upstream, and the plaintiff was paid for the number of days water was pumped from his land. Later the pumping apparatus was moved to the city of Garnett. The engineer testified the plaintiff was not paid for the days when the intake was on the right of way. The plaintiff understood he was paid for all days the pump was used. He testified he secured from the pumper a monthly report of the number of days the pump was operated, and was paid accordingly. The plaintiff could not say how many days the pump was used in 1918, and could not say the pump was there in 1919. He admitted the defendant took no water from the stream for a considerable period of time.

In the latter part of the year 1919, or in the early part of 1920, the defendant erected a dam at the north line of the right of way, and established a permanent pumping station on the south side of the right of way. The plaintiff asserts that a portion of the structure extends over the south line of the right of way; but the mistake in boundary, if any, is not material in this controversy. As a part of its permanent water-taking establishment, the defendant constructed a tile conduit to carry water from the pool south of the ford to the pool north of it.

During the time the defendant has pumped water from the creek, the water level has varied, and the intake has been moved up and down stream accordingly. When the creek was full, or nearly so, a short pipe would be used. On one occasion, when water was low, the plaintiff gave the defendant permission to take water from a pool north of the right of way, and at one time the defendant hauled water and emptied it into the pool on which the pumping station was located. In February, 1920, the water was not against the dam, but extended some twenty-five or thirty feet on the right of way, at-

Brooker v. Railroad Co.

tained a depth of four or five feet at the right-of-way margin, and became deeper on the plaintiff's land. The defendant paid nothing for water pumped after installation of the permanent station, and the action was commenced to recover at the rate of two dollars per day for water taken on 106 consecutive days, beginning February 15, 1920.

In the instructions to the jury, the court recognized the fact that plaintiff and defendant were riparian owners, and stated succinctly the privilege of a riparian owner to make reasonable use of water of the stream. The contract was recognized as in force, and was correctly interpreted as effecting a surrender by the plaintiff of his privilege to assert that the defendant made unreasonable use of water; but the court said:

"Mr. Brooker, having sold his right, or waived his right to complain if the Missouri Pacific took an unreasonable amount of water, and did that for the consideration of two dollars a day, I think the Missouri Pacific should pay him two dollars a day so long as they pumped water from this creek flowing down through Mr. Brooker's farm."

The quoted portion of the instruction was erroneous. The defendant was not buying water which it might take without injuring the plaintiff. The purpose of the contract was to secure to the defendant the privilege of taking water to the appropriation of which the plaintiff might object; and the privilege of taking water to an extent which would not transgress the rule of reasonable use, was not relinquished.

Something is said in the briefs about a practical construction given the contract by conduct of the parties. There is no evidence of such construction. At the beginning, the contract contemplated a temporary, dry-weather, low-water arrangement. During the second stage of the relations of the parties, the plaintiff was probably paid for each day the defendant pumped water, but the defendant intended to pay according to the contract. The permanent pumping station was established for use according to the contract.

The defendant seems to contend it should be allowed to exhaust the water on its right of way before being required to compensate the plaintiff. The evidence does not show whether or not such use is within the defendant's riparian privilege.

The defendant justly complains of the adjudication respecting the meaning of the contract, which would require it to pay in the future for every day its pump is operated, no matter what the quantity

of water in the creek. Now that the meaning of the contract is definitely settled, the sum due the plaintiff seems too small to warrant the expense of another trial. Under these circumstances, the judgment of the district court is reversed, and the cause is remanded with direction to enter judgment in favor of the plaintiff, for such sum as the parties may designate by stipulation filed within thirty days. Should no stipulation be filed, the district court is directed to grant a new trial.